**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Shireen M. Clarkson (SBN 237882)
*sclarkson@clarksonlawfirm.com*
Katherine A. Bruce (SBN 288694)
*kbruce@clarksonlawfirm.com*
Kelsey J. Elling (SBN 337915)
*kelling@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050; Fax: (213) 788-4070

**FARUQI & FARUQI, LLP**
Benjamin Heikali (SBN 307466)
*bheikali@faruqilaw.com*
10866 Wilshire Boulevard, Ste. 1470
Los Angeles, CA 90024
Tel: (424) 256-2884; Fax: (424) 256-2885

*Attorneys for Plaintiff Martin Locklin and Putative Class Members*

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Martin Locklin, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  vs.<br><br>StriVectin Operating Co., Inc.<br><br>        Defendant. | Case No.: 3:21-cv-07967-VC<br>Case filed: October 11, 2021<br>FAC filed: December 6, 2021<br>*Assigned Hon. Vince Chhabria*<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>1. Violation of Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)<br>2. Violation of False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)<br>3. Violation of Consumers Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*)<br>4. Breach of Warranty<br>5. Unjust Enrichment<br><br>**JURY TRIAL DEMANDED** |

FIRST AMENDED CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

# TABLE OF CONTENTS

**Page No.**

COMPLAINT ...................................................................................................1

JURISDICTION.............................................................................................5

VENUE ...........................................................................................................5

PARTIES .........................................................................................................6

    A.    Plaintiff ...............................................................................................6

    B.    Defendant ...........................................................................................7

FACTUAL ALLEGATIONS ...........................................................................8

    A.    Background ........................................................................................8

    B.    The Products' Misleading and Deceptive Labeling.........................16

    C.    Plaintiff and Reasonable Consumers Were Misled by the Products.........................17

    D.    The Products are Substantially Similar............................................20

    E.    No Adequate Remedy at Law ..........................................................21

CLASS ACTION ALLEGATIONS ...............................................................23

COUNT ONE..................................................................................................27

    Violation of California Unfair Competition Law

    (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

    A.    "Unfair" Prong.................................................................................29

    B.    "Fraudulent" Prong .........................................................................31

    C.    "Unlawful" Prong ...........................................................................32

COUNT TWO .................................................................................................34

    Violation of California False Advertising Law

    (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

COUNT THREE ..............................................................................................35

    Violation of California Consumers Legal Remedies Act

    (Cal. Civ. Code §§ 1750, *et seq.*)

FIRST AMENDED CLASS ACTION COMPLAINT

COUNT FOUR ....................................................................................................38

    Breach of Warranty

COUNT FIVE .....................................................................................................40

    Unjust Enrichment/Restitution

PRAYER FOR RELIEF........................................................................................42

DEMAND FOR JURY TRIAL............................................................................42

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

FIRST AMENDED CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

## **COMPLAINT**

1. Plaintiff Martin Locklin ("**Plaintiff**"), individually and on behalf of all others similarly situated, as more fully described herein (the "**Class**" and "**Class Members**"), brings this class action complaint against Defendant StriVectin Operating Co., Inc. ("**Defendant**"), and alleges the following upon information and belief, unless otherwise expressly stated as based upon personal knowledge:

2. **Synopsis.** To obtain an unfair competitive advantage in the billion-dollar sunscreen market, Defendant is exposing consumers and the environment to harmful chemical active ingredients in their sunscreens and falsely labeling them as "REEF SAFE." Defendant has reaped millions of dollars through this fraudulent scheme based on a calculated business decision to put profits over people and the environment. Specifically, Defendant deceptively labels certain of its StriVectin® brand sun care Products[1] as "REEF SAFE" (hereinafter, **"Reef Safe Representation," "False Advertising Claim"** and/or **"Challenged Representation"**), deliberately leading reasonable consumers, including Plaintiff, to believe that the Products only contain ingredients that are reef-safe and otherwise cannot harm reefs, including the coral reefs and marine life that inhabit or depend on them. Fair and accurate exemplars of the Products' front labels, with the Challenged Representation outlined in a red box, are below.

///

///

///

///

///

///

///

///

///

///

---

[1] "Products" are defined in Paragraph 4.

a.   (1) StriVectin® Full Screen™ Clear Finish Sunscreen: Exemplar Front Label



FIRST AMENDED CLASS ACTION COMPLAINT

b.   (2) StriVectin® Full Screen™ Illuminating Finish Sunscreen: Exemplar Front Label



CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

3.      **The Deception of the Challenged Representation.** The Challenged Representation has misled reasonable consumers, including Plaintiff, into believing that the Products only contain ingredients that are reef-safe or otherwise cannot harm reefs, including the coral reefs and the marine life that inhabit or depend on them. However, contrary to this labeling, the Products actually contain avobenzone, homosalate, octisalate, and/or octocrylene (herein referred to as the "**Harmful Ingredient(s)**"), which are chemical ingredients that are not safe for reefs because they can harm and/or kill reefs, including the coral reefs and the marine life that inhabit or depend on them. Through falsely, misleadingly, and deceptively labeling the Products, Defendant sought to take advantage of consumers' desire for sunscreens that are safe for reefs (coral reefs and marine life and related ecosystems that inhabit or depend on coral reefs), while reaping the financial benefits of using less desirable, harmful, and/or less costly chemicals in the Products. Defendant has done so at the expense of unwitting consumers, as well as Defendant's lawfully acting competitors, over whom Defendant maintains an unfair competitive advantage.

4.      **The Products.** The products at issue are StriVectin® brand sun care products (including sunscreens and sun-blocks) manufactured and/or marketed by Defendant that contain the Challenged Representation on the labels and/or packaging, in all sizes, forms of topical application (including, for example, stick, paste, oil, lotion, cream, liquid, spray, or mist), SPFs, scents and/or flavors, variations, and packs, sets or bundles, which include, but are not necessarily limited to:

     a.   StriVectin® Full Screen™ Clear Finish Sunscreen, including

         (1)   Lotion in SPF 30, 1.5-oz (*see*, *supra*, paragraph 2, a.; *see also* **Exhibit 1-1** [Product Images]); and

     b.   StriVectin® Full Screen™ Illuminating Finish Sunscreen, including

         (2)   Lotion in SPF 30, 1.5-oz (*see*, *supra*, paragraph 2, b.; *see also* **Exhibit 1-2** [Product Images]).

The aforementioned Products are collectively referred to herein and throughout this complaint as the "**Products**." *See* **Exhibit 1** [Product Images].

5.      **Primary Litigation Objective.** Plaintiff brings this action individually and on behalf of those similarly situated to represent a National Class and a California Subclass of consumers

who purchased the Products (defined *infra*) for the primary objective of causing Defendant to change the Products' labels or packaging to eliminate or modify the Challenged Representation, or alternatively reformulate the Products to comply with the Challenged Representation, and thereby eliminate or mitigate the representation's deceptive and misleading nature. An injunction, for example, prohibiting Defendant from using the Challenged Representation on the Products, would avoid future deception and economic losses resulting from consumers buying the Products based on the belief that the Challenged Representation is true, when it in fact is not. In this way, a change in Defendant's practices would substantially benefit the public; facilitate a transparent, competitive, and fair-functioning marketplace; protect the environment, including reefs and dependent ecosystems; and protect millions of consumers of the Products, including Plaintiff and the Class, from being defrauded.

6.      **Crux of Case.** The crux of this case is that—irrespective of Defendant's lack of substantiation—the Products are not Reef Safe, which is contrary to the product labeling and marketing.

## JURISDICTION

7.      This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## VENUE

8.      Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. In addition, Plaintiff purchased the unlawful Products in this District, and Defendant has marketed, advertised, and sold the Products within this District.

/ / /

/ / /

/ / /

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

1

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

# PARTIES

## A.   Plaintiff

9.   **Plaintiff Martin Locklin.** The following is alleged based upon personal knowledge: (1) Plaintiff is a resident of San Francisco, California. (2) Plaintiff purchased the StriVectin Full Screen™ Clear Finish, SPF 30, 1.5-oz (the "**Purchased Product**") for approximately $39.00 at a Ulta store in San Francisco, California, in approximately the summer of 2020 (*see*, **Exhibit 1-1** [Exemplar Product Image]). (3) In making the purchase, the Challenged Representation on the Product's label led Plaintiff to believe that the Product's ingredients were all reef-safe and otherwise could not harm reefs, including the coral reefs and marine life that inhabit and depend on them. (4) Plaintiff did not see and was not aware of any asterisk on the Challenged Representation. (5) Plaintiff was not aware that the back panel of the Product contained any information relating to the Challenged Representation, particularly any information that could be inconsistent with the Challenged Representation on the front label of the Product. (6) At the time of purchase, Plaintiff did not know that the aforementioned Challenged Representation was false—i.e., that the Product contains ingredients that were not reef-safe and otherwise could harm reefs, including the coral reefs and marine life that inhabit and depend on them. (7) Plaintiff would not have purchased the Product had he known that the Challenged Representation was false. (8) Plaintiff continues to see the Products available for purchase, desires to purchase them, and would, indeed, purchase them again if the Challenged Representation was in fact true. (9) Plaintiff is not personally familiar with ingredients in the Products and does not possess any specialized knowledge, skill, experience, or education in sun care products, similar to and including the Products, and their ingredients or formulations; the Harmful Ingredients and similar substances; marine life pollutants and substances hazardous to reefs, including coral reefs and the marine life that inhabits and depends on them; and, therefore, Plaintiff has no way of determining whether the Challenged Representation on the Products is true. (10) Plaintiff is, and continues to be, unable to rely on the truth of the Challenged Representation on the Products' labels.

10.   **Plaintiff's Future Harm.** Plaintiff would continue to purchase the Products in the future if the Products, as Defendant continues to advertise and warrant them, lived up to and

FIRST AMENDED CLASS ACTION COMPLAINT

conformed with the Challenged Representation. Further, Plaintiff is an average consumer who is not sophisticated in, for example, sun care product formulations, similar to and including the Products, and chemicals hazardous to reefs, similar to and including the Harmful Ingredients. Since Plaintiff would like to purchase the Products again to obtain the benefits of the Challenged Representation that Defendant continues to use—despite the fact that the Products were once marred by false advertising or warranties—Plaintiff would likely and reasonably, but incorrectly, assume the Products are true to and conform with the Challenged Representation on their labels, packaging, and Defendant's advertisements, including Defendant's website and social media platforms. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Defendant has fixed the Products such that Plaintiff may buy them again, believing they are no longer falsely advertised and warranted and instead believing that they comply with the Challenged Representation. In this regard, Plaintiff is currently and in the future deprived of the ability to rely on the Challenged Representation to purchase the Products.

**B.** **Defendant**

11. **Defendant StriVectin Operating Co., Inc. ("Defendant" and/or "StriVectin")** is a corporation incorporated in the State of Delaware, and headquartered with its primary place of business in the State of New York. Defendant was doing business in the State of California at all relevant times. Directly and through its agents, Defendant has substantial contacts with and receives substantial benefits and income from and through the State of California. Defendant is one of the owners, manufacturers, and/or distributors of the Products, and is one of the companies that created and/or authorized the false, misleading, and deceptive labeling of the Products. Defendant and its agents promoted, marketed, and sold the Products at issue in this jurisdiction and in this judicial district. The unfair, unlawful, deceptive, and misleading Challenged Representation on the Products was prepared, authorized, ratified, and/or approved by Defendant and its agents, and was disseminated throughout California and the nation by Defendant and its agents to deceive and mislead consumers in the State of California and the United States into purchasing the Products.

/ / /

/ / /

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

1

2

3

4

5

6

7

8

9

10

11

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FACTUAL ALLEGATIONS**

A.   **Background**

12.   **Reefs' Diverse Ecosystems.** Reefs are some of the most diverse ecosystems in the world.[2]  In fact, thousands of species of corals have been discovered; some live in warm, shallow, tropical seas and others in the cold, dark depths of the ocean. Because of the diversity of life found in the habitats created by corals, reefs are often called the "rainforests of the sea."  About 25% of the ocean's fish depend on healthy coral reefs.  Fish and other organisms shelter, find food, reproduce, and rear their young in the many nooks and crannies formed by corals.[3]

13.   **Reefs' Impact on Other Ecosystems and Cultural Importance.** Reefs protect coastlines from storms and erosion, provide jobs for local communities, and offer opportunities for recreation.[4] Over half a billion people depend on reefs for food, income, and protection.[5] Additionally, reef ecosystems are culturally important to people around the world.[6] Indeed, the world's largest reef, the Australian Great Barrier Reef, is considered to be one of the great seven natural wonders of the world due to its scale, beauty, and biodiversity.[7] Despite their ecological and cultural importance, reefs are disappearing at alarming rates.[8] In fact, some scientists predict that if current trends continue, nearly all reefs will disappear over the next twenty to fifty years.[9]

14.   **Impact of Pollution on Reefs.** Among other factors, coral reef ecosystems are threatened by pollution. Coral belong to the *Cnidaria* family, which are soft bodied animals that engage in symbiosis with algae (zooxanthellae). Zooxanthellae live on coral. Their photosynthesis

---

[2]   *Coral Reefs*, Office for Coastal Management, https://coast.noaa.gov/states/fast-facts/coral-reefs.html (last accessed Dec. 6, 2021).
[3]   *What is a Coral Reef*, Save The Reef, https://savethereef.org/about.html (last accessed Dec. 6, 2021).
[4]   *Coral Reef Ecosystems*, National Oceanic and Atmospheric Administration, https://www.noaa.gov/education/resource-collections/marine-life/coral-reef-ecosystems (last accessed Dec. 6, 2021).
[5]   *Id.*
[6]   *Id.*
[7]   *Id.*; *Great Barrier Reef*, WWF [World Wildlife Fund], https://www.wwf.org.au/what-we-do/oceans/great-barrier-reef#gs.b5pmtu (last accessed Dec. 6, 2021).
[8]   *Id.*
[9]   Trevor Nace, *Nearly All Coral Reefs Will Disappear Over the Next 20 Years, Scientists Say*, Forbes (Feb. 24, 2020), https://www.forbes.com/sites/trevornace/2020/02/24/70-90-percent-of-coral-reefs-will-disappear-over-the-next-20-years-scientists-say/?sh=70e461da7d87 (last accessed Dec. 6, 2021).

FIRST AMENDED CLASS ACTION COMPLAINT

gives coral energy, and the algae itself provides the coral's vibrant colors. As coral grows, it forms branching structures culminating in reefs. When coral reefs face oxidative stress from pollutants, they expel the algae from their surface, turning the coral white (also known as "bleaching"). This process often leads to the coral reef's demise.[10]

11



**Left: Bleached Coral**                    **Right: Healthy Coral**

16.    **Chemicals in Sunscreens Cause Coral Bleaching.** According to studies, up to 14,000 tons of sunscreen are estimated to wash into coral reefs around the globe each year.[12] The

---

[10] Samantha L. Schneider and Henry W. Lim, *Review of environmental effects of oxybenzone and other sunscreen active ingredients*, J. Am. Acad. Dermatology (2019).
[11] *What is a Coral Reef*, Save The Reef, https://savethereef.org/about.html (last accessed Dec. 6, 2021).
[12] Schneider, *supra* note 10.

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

chemical compounds found in sunscreen products, like the Products, that wash into coral reefs can cause abrupt and complete bleaching of hard corals, even at extremely low concentrations.[13]

17.    The National Ocean Service, an agency within the U.S. Department of Commerce National Oceanic and Atmospheric Administration ("**NOAA**") published the following infographic that demonstrates the harm that the chemicals found in sunscreens, like the Products, can have on coral reefs and related marine life:[14]



18.    **Consumer Demand for Reef Safe Sunscreens.** In recent years, consumers have become increasingly concerned about protecting reefs through individual action, including purchasing reef safe personal care products, in particular sun care and sun protection products, which are free from chemicals that can harm reefs, including the coral reefs and marine life that

[13] *Bleached, But Not by the Sun: Sunscreen Linked to Coral Damage*, NCBI, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2291012/ (last accessed Dec. 6, 2021); *Protect Yourself and Protect the Reef*, National Park Service, https://www.nps.gov/articles/protect-yourself-and-protect-the-reef.htm (last accessed Dec. 6, 2021).
[14] *Skincare Chemicals and Coral Reefs*, National Oceanic and Atmospheric Administration, https://oceanservice.noaa.gov/news/sunscreen-corals.html (last accessed Dec. 6, 2021).

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

10

inhabits and depends on them. Thus, reef-safe personal care products, in particular sun care products such as sunscreens and sun blocks, are rapidly increasing in popularity due to their perceived positive ecological impact.[15]

19.   **Harmful Ingredients.** Avobenzone, homosalate, octisalate and octocrylene (collectively, "**Harmful Ingredients**") are chemicals that are well documented as being harmful to reefs, including coral reefs and the marine life that inhabit and depend on them.

20.   **Avobenzone.** Avobenzone is typically used in the place of oxybenzone, another harmful chemical ingredient. When avobenzone is exposed to ultraviolet light the compound degrades and causes damage to coral reefs and aquatic life.[16] Furthermore, avobenzone may kill corals' cells which induces a bleaching effect on them.[17]

21.   **Octocrylene**. Octocrylene produces benzophenone, which is a mutagen, carcinogen, and endocrine disruptor.[18] It is associated with a wide range of toxicities, including genotoxicity, carcinogenicity, and endocrine disruption. Octocrylene has been shown to accumulate in various types of aquatic life and cause DNA damage, developmental abnormalities, and adverse reproductive effects.[19] Bioaccumulation of this chemical leads to endocrine disruption, alteration of

[15] *Reef Safe Sunscreen Guide*, Save the Reef, https://savethereef.org/about-reef-save-sunscreen.html (last accessed Dec. 6, 2021); Margaux Anbouba, *9 Reasons Why You Should Switch to a Reef Safe Sunscreen*, Elle (May 29, 2020), https://www.elle.com/beauty/makeup-skin-care/g32685164/best-reef-safe-sunscreen/ (last accessed Dec. 6, 2021); Dorbina Zhekova and Rebecca Carhart, *How to Know If Your Sunscreen Is Killing Coral Reefs – and the Brands to Try Instead*, Travel + Leisure (Mar. 25, 2021), https://www.travelandleisure.com/style/beauty/reef-safe-sunscreen (last accessed Dec. 6, 2021).

[16] Joanna Ruszkiewicz, et al., *Neurotoxic effect of active ingredients in sunscreen products, a contemporary review*, NCBI, doi: 10.10/16/j.toxrep.2017.05 (2017), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5615097/#bib0635 (last accessed Dec. 6, 2021); *see* C.A. Downs, et. al., *Benzophenone Accumulates over Time from the Degradation of Octocrylene in Commercial Sunscreen Products,* ACS (2021), https://pubs.acs.org/doi/10.1021/acs.chemrestox.0c00461 (last visited December 6, 2021).

[17] Nancy Blüthgen, et al., *Accumulation and effects of the UV-Filter octocrylene in adult and embryonic zebrafish (Danio Rerio),* PubMed, doi: 10.1016/j.scitotenv.2014.01.015 (2014), https://pubmed.ncbi.nlm.nih.gov/24463256/#:~:text=Wide%20application%20of%20the%20UV-filter%20octocrylene%20%28OC%29%20in,embryos%20to%2069%2C%20293%20and%20925%20%CE%BCg%2FL%20OC (last accessed Dec. 6, 2021).

[18] *Octocrylene*, *Environmental Working Group,* https://www.ewg.org/skindeep/ingredients/704206-OCTOCRYLENE (last accessed Dec. 6, 2021).

[19] Pablo Gago-Ferrero, et al., *First determination of UV filters in marine mammals. Octocrylene levels in Franciscana dolphins*, PubMed (June 2013), pp. 5619–25, doi:10.1021/es400675y, https://pubmed.ncbi.nlm.nih.gov/23627728/ (last accessed Dec. 6, 2021); Qiuya Y. Zhang, et al., *Assessment of multiple hormone activities of a UV-filter (octocrylene) in zebrafish (Danio rerio)*, (Sept. 2016), pp. 433–41, doi:10.1016/j.chemosphere.2016.06.037 (last accessed Dec. 6, 2021).

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

11

gene transcription, and developmental toxicity in fish, dolphins, sea urchins, and other marine life.[20]

In addition, octocrylene adversely impacts coral reefs, even at low concentrations, by accumulating

in coral tissue and triggering mitochondrial dysfunction.[21]

22. **Homosalate.** Homosalate also has harmful effects similar to octocrylene. Homosalate

is an endocrine disruptor because it impacts the body's hormone systems, particularly the estrogen

system and related androgen and progesterone systems. [22] Additionally, homosalate enhances the

---

[20] Blüthgen, *supra* note 17.

[21] Didier Stien, et al., *Metabolomics Reveal That Octocrylene Accumulates in Pocillopora Damicornis Tissues as Fatty Acid Conjugates and Triggers Coral Cell Mitochondrial Dysfunction*, Analytical Chemistry, vol. 91, no. 1 (Jan. 2019), pp. 990–95, doi:10.1021/acs.analchem.8b04187, https://pubmed.ncbi.nlm.nih.gov/30516955/ (last accessed Dec. 6, 2021).

[22] *EWG's Sunscreen Guide*, EWG, https://www.ewg.org/sunscreen/report/executive-summary/ (last accessed Dec. 6, 2021); *Homosalate*, Campaign for Safe Cosmetics, https://www.safecosmetics.org/get-the-facts/chemicals-of-concern/homosalate/ (last accessed Dec. 6, 2021); Richard Schreurs, et al., *Estrogenic Activity of UV Filters Determined by an In Vitro Reporter Gene Assay and an In Vivo Transgenic Zebrafish Assay*, 76 Archives of Toxicology, pp. 257-261 (June 2002), https://link.springer.com/article/10.1007/s00204-002-0348-4 (last accessed Dec. 6, 2021); Petra Y. Kunz, et al., *Multiple hormonal activities of UV filters and comparison of in vivo and in vitro estrogenic activity of ethyl-4-aminobenzoate in fish*, 79 Aquatic Toxicology, pp. 305-324 (Issue No. 4, Oct. 2006), https://www.sciencedirect.com/science/article/abs/pii/S0166445X06002700 (last accessed Dec. 6, 2021); I. Jiménez-Díaz, et al., *Simultaneous determination of the UV-filters benzyl salicylate, phenyl salicylate, octyl salicylate, homosalate, 3-(4-methylbenzylidene) camphor and 3-benzylidene camphor in human placental tissue by LC-MS/MS. Assessment of their in vitro endocrine activity*, 936 Journal of Chromatography Biomed Life Sci., pp. 80-87 (Oct. 2013), doi: 10.1015/j.jchromb.2013.08.006, https://pubmed.ncbi.nlm.nih.gov/24004914/ (last accessed Dec. 6, 2021); Risheng Ma, et al., *UV Filters with Antagonistic Action at Androgen Receptor in the MDA-kb2 Cell Transcriptional-Activation Assay*, 74 Toxicological Sciences, pp/ 43-50 (Issue No. 1, July 2003), https://academic.oup.com/toxsci/article/74/1/43/1664165 (last accessed Dec. 6, 2021) ; Krause, M., et al., *Sunscreens: are they beneficial for health? An overview of endocrine disrupting properties of UV-filters*, 35 International Journal of Andrology, pp. 424-436, doi: 10/1111/j.1365-2605.2012.01280.x, (Issue No. 3, June 2012), https://pubmed.ncbi.nlm.nih.gov/22612478/ (last accessed Dec. 6, 2021); Richard H. M. M. Schreurs, *Interaction of polycyclic musks and UV filters with the estrogen receptor (ER), androgen receptor (AR), and progesterone receptor (PR) in reporter gene bioassays*, 83 Toxicological Sciences, pp. 264-272 (Nov. 2005), https://pubmed.ncbi.nlm.nih.gov/15537743/ (last accessed Dec. 6, 2021); Margret Schlumpf, et al., *Exposure patterns of UV filters, fragrances, parabens, phthalates, organochlor pesticides, PBDEs, and PCBs in human milk: correlation of UV filters with use cosmetics*, 81 Chemosphere, pp. 1171-1183 (Nov. 2010), https://pubmed.ncbi.nlm.nih.gov/21030064/ (last accessed Dec. 6, 2021); E. Chatelain, et al., *Skin penetration and sun protection factor of five UV filters: effect of the vehicle*, 16 Skin Pharmacology and Applied Skin Physiology, pp. 28-35 (Issue No. 1, Jan.-Feb. 2003), https://pubmed.ncbi.nlm.nih.gov/12566826/ (last accessed Dec. 6, 2021); Vikram Sarveiya, et al., *Liquid Chromatographic Assay for Common Sunscreen Agents: Application to In Vivo Assessment of Skin Penetration and Systemic Absorption in Human Volunteers*, 803 Journal of Chromatography, pp. 225-231 (Issue No. 2, Apr. 2004), https://pubmed.ncbi.nlm.nih.gov/15063329/ (last accessed Dec. 6, 2021); Tae Hwan Kim, et al., *Percutaneous Absorption, Disposition, and Exposure Assessment of Homosalate, a UV Filtering Agent, in Rats*, 77 Journal of Toxicology and Environmental Health A., pp. 202-213, (Issue No. 4, 2014); Rhonda M. Brand, et al., *Sunscreens*

---

12

body's absorption of pesticides. *Id.* This hormone disruption, as well as the increased pesticide absorption, cause harm to coral reefs and aquatic organisms. *Id.*

23.   **Octisalate.** Octisalate also has similar harmful effects to the environment and coral reefs. Octisalate is frequently detected in coral reefs and, unfortunately, common wastewater treatments cannot remove this chemical, leading octisalate to accumulate and negatively affect coral reef ecosystems and marine organisms.[23] The toxicity of this chemical contributes to the bleaching of coral reefs, which ultimately leads to coral extinction.[24]

24.   **The HEL—Octocrylene.** The Haereticus Environmental Laboratory ("**HEL**") is a nonprofit organization that specializes in research and advocacy in a number of areas including sunscreens, and how their ingredients impact natural environmental habitats. Regarding certain harmful ingredients used in sunscreens, the HEL reports that octocrylene is a chemical that causes harm and/or can kill coral reefs, and poses a substantial threat to ecosystem health.[25]

25.   **The NOS—Octocrylene.** The National Ocean Service ("**NOS**") also advocates against the use of certain chemicals, including octocrylene, in the use of sunscreen because of the severe negative impact that it has on coral reefs.[26] The NOS classifies octocrylene as a threat to coral reefs, as well as marine ecosystems.[27]

26.   **The Hawaii Center for Biological Diversity (the "Center")—Octocrylene & Avobenzone.** The Center is petitioning the FDA for a national ban on chemicals, like octocrylene

---

*Containing Physical UV Blockers Can Increase Transdermal Absorption of Pesticides*, 19 Toxicology and Industrial Health, pp. 9-16, doi: 10.1191/0748233703th169oa (Feb. 2003), https://pubmed.ncbi.nlm.nih.gov/15462532/#:~:text=This%20work%20has%20been%20extended %20to%20determine%20whether,oxide%20%28ZnO%29%20enhance%20the%20transdermal%2 0absorption%20of%20pesticides (last accessed Dec. 6, 2021); Adam Pont, et al., *Active Ingredients in Sunscreens Act as Topical Penetration Enhancers for the Herbicide 2,4-Dichlorophenoxyacetic Acid*, 195 Toxicology and Applied Pharmacology, pp. 348-354, doi: 10.1016/j.taap.2003.09.021 (Mar. 2004), https://pubmed.ncbi.nlm.nih.gov/15020197/ (last accessed Dec. 6, 2021).

[23] Lydia Ouchene, et al., *Hawaii and Other Jurisdictions Ban Oybenzone or Octionaxte Sunscreens Based on the Confirmed Adverse Environmental Effects of Sunscreen Ingredients on Aquatic Environments*, Journal of Cutaneous Medicine and Surgery, p. 648, doi: 10.1177/1200475419871592 (Nov./Dec. 2019), https://pubmed.ncbi.nlm.nih.gov/31729915/ (last accessed Dec. 6, 2021).

[24] *Id.*

[25] *Protect Land + Sea Certification*, Haereticus Environmental Laboratory (2018), http://haereticus-lab.org/protect-land-sea-certification-3/ (last accessed Dec. 6, 2021).

[26] *Skincare Chemicals and Coral Reefs*, National Oceanic and Atmospheric Administration, https://oceanservice.noaa.gov/news/sunscreen-corals.html (last accessed Dec. 6, 2021).

[27] *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

1  and avobenzone, in sunscreens that harm and kill the coral reefs.[28] The center is also advocating for

2  a statewide ban of octocrylene and avobenzone in sunscreens, noting the toxic impacts these

3  chemicals have on the coral reefs and marine life.[29]

4        27.    **FDA Petition—Octocrylene.** In fact, a larger group of researchers have also

5  petitioned the FDA to remove from sale all sunscreens that contain octocrylene.[30] This is because

6  products made with octocrylene may contain benzophenone, a known carcinogen, which is

7  considered to be an endocrine, metabolic, and reproductive disruptor.[31]

8        28.    **Hawaii Legislature—Octocrylene & Avobenzone.** In 2018, state lawmakers banned

9  oxybenzone and octinoxate from being included as ingredients in sunscreens sold in Hawaii because

10  of their deleterious impact on coral reefs and dependent marine life. In 2021, state lawmakers

11  amended the bill to also ban the sale of sunscreens that contain avobenzone and octocrylene starting

12  in 2023.[32] Octocrylene was banned because it can disrupt human hormones and has a toxic impact

13  on aquatic ecosystems, including coral reefs.[33] Avobenzone was banned because it is "an endocrine

14  disruptor and can reduce coral resilience against the high ocean temperatures that are killing corals

15  worldwide."[34]

16        29.    **International Bans—Octocrylene & Homosalate.** In June 2019, the US Virgin

17  Islands banned sunscreens containing octocrylene, oxybenzone, and octinoxate, with the ban

18  effective beginning March 2020.[35]   The Republic of the Marshall Islands has also banned

---

[28] *Hawai'i Senate Bill Bans Harmful Sunscreen Chemicals*, Center for Biological Diversity (March 9, 2021), https://biologicaldiversity.org/w/news/press-releases/hawaii-senate-bill-bans-harmful-sunscreen-chemicals-2021-03-09/ (last accessed Dec. 6, 2021).

[29] *Id.*

[30] Anna Edney, *Popular sunscreens under scrutiny as scientists cite another potential carcinogen*, Los Angeles Times (Aug. 10, 2021), https://www.latimes.com/business/story/2021-08-10/sunscreen-fda-carcinogen-benzophenone-octocrylene-concerns (last accessed Dec. 6, 2021).

[31] *Id.*

[32] *Hawaii Senate Bill 132*, Hawaii State Legislature, https://www.capitol.hawaii.gov/measure_indiv.aspx?billtype=SB&billnumber=132&year=2021 (last accessed Dec. 6, 2021).

[33] *Bill would prohibit sale of sunscreen products containing avobenzone and octocrylene*, West Hawaii Today (March 10, 2021), https://www.westhawaiitoday.com/2021/03/10/hawaii-news/bill-would-prohibit-sale-of-sunscreen-products-containing-avobenzone-and-octocrylene/ (last accessed Dec. 6, 2021).

[34] *Id.*

[35] Shanthi Narla, et. al., *Sunscreen: FDA regulation, and environmental and health impact*, Royal Society of Chemistry (Nov. 22, 2019), https://pubs.rsc.org/en/content/articlehtml/2019/pp/c9pp00366e (last accessed on Dec. 6, 2021).

14

avobenzone. In addition, Palau, Bonaire, and the nature reserve areas in Mexico have approved legislation for similar bans, and a similar ban is being discussed in Brazil and the EU.[36] Furthermore, the European Commission has recently recommended that homosalate was not safe to use at certain concentrations and should have a maximum concentration of 1.4 percent.[37] Scientists in the United States have likewise raised concerns about the toxic nature of these ingredients, as well as homosalate, and believe they also have a harmful impact on reefs.[38]

30.   **The EWG—Octisalate**. The EWG warns consumers that the harmful effect of Octisalate, to the human body and aquatic ecosystems, is mostly uncertain because there is insufficient data to determine whether this chemical is safe to use in sun protectants and sunscreens.[39] Octisalate is frequently detected in coral reefs and, unfortunately, common wastewater treatments cannot remove this chemical, leading octisalate to accumulate and negatively affect the coral reef ecosystems and marine organisms.[40] The toxicity of this chemical contributes to the bleaching of coral reefs, which ultimately leads to coral extinction.[41]

31.   **Consumers' Desire for Reef-Safe Products.** Consequently, because of the ecological concerns about sun care products (such as sunscreens and sun blocks), consumers have

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

---

[36] *Id.*

[37] *The trouble with ingredients in sunscreens*, Environmental Working Group, https://www.ewg.org/sunscreen/report/the-trouble-with-sunscreen-chemicals/ (last accessed on Dec. 6, 2021).

[38] Changwon Yang, et al., *Homosalate Aggravates the Invasion of Human Trophoblast Cells as Well as Regulates Intracellular Signaling Pathways Including PI3K/AKT and MAPK Pathways*, 243 Environmental Pollution, pp. 1263-73 (Vol. 243, Dec. 2018), https://europepmc.org/article/med/30267922 (last accessed Dec. 6, 2021); Chang-Beom Park, et al., *Single- and Mixture Toxicity of Three Organic UV-Filters, Ethylhexyl Methoxycinnamate, Octocrylene, and Avobenzone on Daphnia Magna*, 137 Ecotoxicology and Environmental Safety, pp. 57-63, doi: 10.1016/j.ecoenv.2016.11.017 (Mar. 2017), https://www.researchgate.net/publication/311425878_Single-_and_mixture_toxicity_of_three_organic_UV-filters_ethylhexyl_methoxycinnamate_octocrylene_and_avobenzone_on_Daphnia_magna (last accessed Dec. 6, 2021); Shaun McCoshum, et al., *Direct and Indirect Effects of Sunscreen Exposure for Reef Biota*, 776 Hydrobiologia 139-46 (Issue No. 1, Aug. 2016), https://www.researchgate.net/publication/299423358_Direct_and_indirect_effects_of_sunscreen_exposure_for_reef_biota (last accessed Dec. 6, 2021); D.M.E. Slijkerman and M. Keur, *Sunscreen Ecoproducts: Product Claims, Potential Effects and Environmental Risks of Applied UV Filters*, Wageningen Marine Research (Oct. 2018), https://research.wur.nl/en/publications/sunscreen-ecoproducts-product-claims-potential-effects-and-enviro (last accessed Dec. 6, 2021).

[39] *The trouble with ingredients in sunscreens*, *supra* note 37.

[40] Ouchene, *supra* note 23.

[41] *Id.*

FIRST AMENDED CLASS ACTION COMPLAINT

increasingly sought out products that are reef-safe and otherwise do not harm reefs, including coral reefs and the marine life that inhabit and depend on them. As a result, sales have surged in recent years for consumer personal care and sun care products advertised with "reef safe," "reef friendly," "reef conscious," and similar claims.

**B.   The Products' Misleading and Deceptive Labeling**

32.   **Products.** As described *supra*, Defendant manufactures, markets, advertises, labels, packages, and sells the Products.

33.   **Challenged Representation on Products' Labels.** Also as described *supra*, Defendant falsely and misleadingly labels the Products with the Challenged Representation. The Challenged Representation is conspicuous. It is prominently placed on each Product's primary display panel of the front label or packaging. The front primary display panel contains scant imagery and information about the Products, largely limited to the brand name, identity of the product (e.g., sunscreen), and one or a few claims about the Products' attributes (e.g., size). The Challenged Representation is stated in clear, legible, and highly visible font, including a relatively large typeface that starkly contrasts with the background color and imagery. The net-effect or net-impression on consumers who view the Products is that their attention is drawn to the Challenged Representation. *See* **Exhibit 1** [Product Images].

34.   **Consumers Reasonably Rely on the Challenged Representation.** Based on the Challenged Representation, reasonable consumers believe that the Products are safe for reefs. Put differently, reasonable consumers believe the Products do not contain any ingredients that can harm reefs, including coral reefs and the marine life that inhabits and relies on them, as a result of the Challenged Representation.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

FIRST AMENDED CLASS ACTION COMPLAINT

35. **Harmful Chemicals Contained in the Products.** In spite of the Products' labeling, they contain Harmful Ingredients, including avobenzone, homosalate, octisalate, and octocrylene, which are chemicals that harm reefs, including coral reefs and the marine life that inhabits them. As summarized below, the Products contain the following Harmful Ingredients:

a. **StriVectin Full Screen™ Clear Finish Sunscreen (Lotion, SPF 30, 1.5 oz)**
   Avobenzone   3%
   Homosalate   9%
   Octisalate   4.5%
   Octocrylene   8.5%

   *See* **Exhibit 1-1** (Clear Finish Sunscreen SPF 30)

b. **StriVectin Full Screen™ Illuminating Finish Sunscreen (Lotion, SPF 50, 1.5 oz)**
   Avobenzone   3%
   Homosalate   7%
   Octisalate   4.5%
   Octocrylene   10%

   *See* **Exhibit 1-2** (Illuminating Finish Sunscreen SPF 50)

36. **True Reef Safe Sunscreens.** True reef-safe sun care products do not contain any ingredients, like the Harmful Ingredients in the Products, that can harm reefs, including the coral reefs and the marine life that inhabits and depends on them. This includes mineral-based sunscreens that use ingredients like zinc oxide and titanium dioxide, instead of the Harmful Ingredients. Many environmental organizations have favored these sunscreens because, based on current data, they have been found to be safe for people, the environment, and aquatic life, like reefs. However, manufacturers, such as Defendant, "greenwash" their Products by labeling them with environmentally and eco-safe claims, such as the Challenged Representation, to charge consumers a premium for reef-safe products, gain an unfair advantage over their competitors, and defraud consumers into buying the Products even though they do not conform to the Challenged Representation and, instead, contain the Harmful Ingredients that harm reefs, including coral reefs and the marine life that inhabits and depends on them.

**C.   Plaintiff and Reasonable Consumers Were Misled by the Products**

37. **Deception.** Defendant's labeling and advertising of the Products with the Challenged Representation, when they are not reef-safe because they contain the Harmful Ingredients which

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

17

can harm reefs, misleads and deceives reasonable consumers, including Plaintiff, into purchasing the Products to their financial detriment.

38.     **Misrepresentation/Omission.** As set forth herein, the Challenged Representation misrepresents that the Products do not contain ingredients that are unsafe for reefs and that the Products' ingredients otherwise could not harm reefs, including coral reefs and the marine life that inhabits and depends on them, because the Products actually contain Harmful Ingredients that are unsafe for, and can otherwise harm, reefs, including coral reefs and/or the marine life that inhabits and depends on them.

39.     **Material.** The Challenged Representation was and is material to reasonable consumers, including Plaintiff, in making the decision to purchase the Products, as set forth herein.

40.     **Reliance.** Reasonable consumers, including Plaintiff, relied on the Challenged Representation in deciding to purchase the Products, as set forth herein.

41.     **Consumers Lack Knowledge of Falsity.** Consumers, including Plaintiff, who purchased the Products, did not know, and had no reason to know, at the time of purchase, that the Products' Challenged Representation was false, misleading, deceptive, and unlawful as set forth herein.  Moreover, no reasonable consumer would suspect that any potential inconspicuous or small print language on the back panels of the Products' labels would arguably contradict or qualify the prominent front-label Challenged Representation, disclose the fact  that the Products contain ingredients harmful or toxic to reefs, or disclose that the Products are not actually "REEF SAFE." Thus, a reasonable consumer cannot be charged with actual or constructive knowledge that, contrary to the prominent front-label Challenged Representation, the Products contain ingredients harmful or toxic to reefs or that the Products are not actually "REEF SAFE."

42.     **Defendant's Knowledge.** Defendant knew, or should have known, that the Challenged Representation was false, misleading, deceptive, and unlawful, at the time that Defendant manufactured, marketed, advertised, labeled, and sold the Products using the Challenged Representation, and Defendant intentionally and deliberately used the Challenged Representation to cause Plaintiff and similarly situated consumers to buy them believing that the Products are safe for, and otherwise could not harm, reefs (including coral reefs and the marine life that inhabits and

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

depends on them).

a.   The conspicuousness of the Challenged Representation on the Products' labels and repeated use of the Challenged Representation in advertisements demonstrate Defendant's awareness of the materiality of this representation and understanding that consumers prefer and are motivated to buy products that conform to the Challenged Representation.

b.   Generally, manufacturers and marketers repeat marketing messages to emphasize and characterize a brand or product line. Similarly, they reserve the front primary display panel of labels on consumer products of similar dimensions for the most important and persuasive information that they believe will motivate consumers to buy the products.

c.   Defendant, as the manufacturer, formulated the Products with the Harmful Ingredients and otherwise approved their inclusion in the Products. Defendant, as the manufacturer, had exclusive control over the Challenged Representation's inclusion on the Products' labels and in their advertisements—i.e., Defendant readily and easily could have removed the Challenged Representation or refrained from using it on the labels and advertisements of the Products.

d.   Defendant is and was, at all times, statutorily required to ensure it has adequate substantiation for the Challenged Representation prior to labeling the Products, advertising the Products, and selling the Products anywhere in the United States. Here, adequate substantiation and compliance with regulatory law require reliable scientific evidence that supports such far-reaching environment-safe and/or eco-safe claims as the Challenged Representation.

e.   Thus, Defendant knew, or should have known, at all relevant times, that the Challenged Representation is false and/or deceptive and that reasonable consumers, such as Plaintiff, are being misled into buying the Products based on the belief that the Products are reef safe. In this way, Defendant either intentionally or recklessly defrauded consumers, including Plaintiff, into buying the Products.

19

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

43.   **Detriment.** Plaintiff and similarly situated consumers would not have purchased the Products, or would not have purchased the Products for as great a price, if they had known that the Challenged Representation was false and, therefore, the Products did not have the attribute claimed, promised, warranted, advertised, and represented. Accordingly, based on Defendant's material misrepresentations and omissions, reasonable consumers, including Plaintiff, purchased the Products to their detriment.

**D.   The Products are Substantially Similar**

44.   As described herein, Plaintiff purchased the Purchased Product. The additional Products identified above in paragraph 4 *supra* (collectively, the "**Unpurchased Products**") are substantially similar to the Purchased Product.

a.   **Defendant.** All Products are manufactured, sold, marketed, advertised, labeled, and packaged by Defendant.

b.   **Brand.** All Products are sold under the same brand name: StriVectin®.

c.   **Marketing Demographics.** All Products are marketed directly to consumers for personal use.

d.   **Purpose.** All Products are sun care products primarily designed to provide protection from the sun.

e.   **Application.** All Products are applied in the same manner—topically; directly onto the skin, lips, and/or body surfaces.

f.   **Misrepresentations.** All Products contain the same Challenged Representation conspicuously and prominently placed on the primary display panel of the front label.

g.   **Packaging.** All Products are packaged in similar packaging.

h.   **Key Ingredients.** All Products contain the same exact Harmful Ingredients.

i.   **Misleading Effect.** The misleading effect of the Challenged Representation on consumers is the same for all Products—consumers pay for reef-safe products, but receive products that are not reef-safe and otherwise can harm reefs, including coral reefs and the marine life that inhabits and depends on them.

**E.**     **No Adequate Remedy at Law**

45.     **No Adequate Remedy at Law.** Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a.     **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 and 6 years. Thus, California Subclass members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.  Similarly, Nationwide Class members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

b.     **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein.  It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Products with the Challenged Representation, across a multitude of media platforms, including the Products' labels and packaging, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the Challenged Representation. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of products at issue).  Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct). Similarly, unjust enrichment/restitution is broader than breach of warranty. For example, in some states, breach of warranty may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution. Thus, Plaintiff and Class members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under breach of warranty, because they purchased the products from third-party retailers or did not provide adequate notice of a breach prior to the commencement of this action.

c. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products with the Challenged Representation. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). In addition, Plaintiff is *currently* unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation have not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Product sales, and quantities of past/future Product sales.

d. **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e. **California vs. Nationwide Class Claims**. Violation of the UCL, FAL, and CLRA

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

are claims asserted on behalf of Plaintiff and the California Subclass against Defendant, while breach of warranty and unjust enrichment/restitution are asserted on behalf of Plaintiff and the Nationwide Class. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Class. In other words, legal remedies available or adequate under the California-specific causes of action (such as the UCL, FAL, and CLRA) have no impact on this Court's jurisdiction to award equitable relief under the remaining causes of action asserted on behalf of non-California putative class members.

f.  **Procedural Posture—Incomplete Discovery & Pre-Certification.** Lastly, this is an initial pleading in this action and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves Plaintiff's right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## CLASS ACTION ALLEGATIONS

46.   **Class Definition.** Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and all others similarly situated, and as members of the Classes defined as follows:

> All residents of the United States who, within the applicable statute of limitations periods, purchased the Products for purposes other than resale ("**Nationwide Class**"); and

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

All residents of California who, within four years prior to the filing of this Complaint, purchased the Products for purposes other than resale ("**California Subclass**").

("Nationwide Class" and "California Subclass," collectively, "**Class**").

47.     **Class Definition Exclusions.** Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

48.     **Reservation of Rights to Amend the Class Definition.** Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

49.     **Numerosity:** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of tens of thousands of purchasers (if not more) dispersed throughout the United States, and the California Subclass likewise consists of thousands of purchasers (if not more) dispersed throughout the State of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

50.     **Common Questions Predominate:** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

a.     Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising and selling the Products;

b.     Whether Defendant's conduct of advertising and selling the Products as containing only reef safe ingredients when they do not constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq*.;

c.     Whether Defendant used deceptive representations in connection with the sale of the Products in violation of Civil Code section 1750, *et seq*.;

d.     Whether Defendant represented that the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq*.;

e.   Whether Defendant advertised the Products with intent not to sell them as advertised in violation of Civil Code section 1750, *et seq*.;

f.   Whether Defendant's labeling and advertising of the Products are untrue or misleading in violation of Business and Professions Code section 17500, *et seq*.;

g.   Whether Defendant knew or by the exercise of reasonable care should have known its labeling and advertising was and is untrue or misleading in violation of Business and Professions Code section 17500, *et seq*.;

h.   Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

i.   Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

j.   Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

k.   Whether Plaintiff and the Class paid more money for the Products than they actually received;

l.   How much more money Plaintiff and the Class paid for the Products than they actually received;

m.   Whether Defendant's conduct constitutes breach of warranty;

n.   Whether Plaintiff and the Class are entitled to injunctive relief; and

o.   Whether Defendant was unjustly enriched by their unlawful conduct.

51.   **Typicality**:  Plaintiff's claims are typical of the claims of the Class Members he seeks to represent because Plaintiff, like the Class Members, purchased Defendant's misleading and deceptive Products.  Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct.  Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

52.   **Adequacy**: Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the Class Members Plaintiff seeks to represent. Plaintiff will fairly and adequately protect Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

53.     **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a.      The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b.      Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoy its ill-gotten gains;

c.      Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d.      When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.      This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendant.

54.     **Inconsistent Rulings.** Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

55.     **Injunctive/Equitable Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

56.     **Manageability.** Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

/ / /

/ / /

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

## COUNT ONE

### Violation of California Unfair Competition Law

### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

### (*On Behalf of the California Subclass*)

57.     **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

58.     **California Subclass.** This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq.*, on behalf of Plaintiff and a California Subclass who purchased the Products within the applicable statute of limitations.

59.     **The UCL.** California Business & Professions Code, sections 17200, *et seq.* (the **"UCL"**) prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

60.     **False Advertising Claims.** Defendant, in its advertising and packaging of the Products, made false and misleading statements and fraudulent omissions regarding the quality and characteristics of the Products—specifically, the Reef Safe Representation—despite the fact the Products contain chemical ingredients that can harm and/or kill coral reefs. Such claims and omissions appear on the label and packaging of the Products, which are sold at retail stores and point-of-purchase displays.

61.     **Defendant's Deliberately False and Fraudulent Marketing Scheme.** Defendant does not have any reasonable basis for the claims about the Products made in Defendant's advertising and on Defendant's packaging or labeling because the Products contain ingredients that can cause harm and/or kill coral reefs. Defendant knew and knows that the Products are not truly reef safe sunscreens, though Defendant intentionally advertised and marketed the Products to deceive reasonable consumers into believing that Products contain only ingredients that are safe for coral reefs.

62.     **False Advertising Claims Cause Purchase of Products.** Defendant's labeling and advertising of the Products led to, and continues to lead to, reasonable consumers, including

Plaintiff, believing that the Products are truly reef safe and do not harm and/or kill coral reefs.

63.   **Injury in Fact.** Plaintiff and the California Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendant's False Advertising Claims—namely Plaintiff and the California Subclass lost the purchase price for the Products they bought from the Defendant.

64.   **Conduct Violates the UCL.** Defendant's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."  Cal. Bus & Prof. Code § 17200. In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

65.   **No Reasonably Available Alternatives/Legitimate Business Interests.** Defendant failed to avail themselves of reasonably available, lawful alternatives to further their legitimate business interests.

66.   **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendant voluntarily alters its conduct or Defendant is otherwise ordered to do so.

67.   **Injunction.** Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiff and the members of the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling and advertising the sale and use of the Products. Likewise, Plaintiff and the members of the California Subclass seek an order requiring Defendant to disclose such misrepresentations, and to preclude Defendant's failure to disclose the existence and significance of said misrepresentations.

68.     **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the UCL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the California Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

69.     **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for violation of the UCL on behalf of Plaintiff and the California Subclass. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving.  Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff.  Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct.  Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights.  Defendant's misconduct is fraudulent as Defendant intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers.  The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

### A.     "Unfair" Prong

70.     **Unfair Standard.** Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

71.     **Injury.** Defendant's action of mislabeling the Products with the Challenged Representation does not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive products commensurate with their reasonable expectations, overpay for the Products, and receive Products of lesser standards than what they reasonably expected to receive. Consumers cannot avoid any of the injuries caused by Defendant's deceptive labeling and advertising of the Products. Accordingly, the injuries caused by Defendant's deceptive labeling and advertising outweigh any benefits.

72.     **Balancing Test.** Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

73.     **No Utility.** Here, Defendant's conduct of labeling the Products with the Reef Safe Representation when the Products contain harmful chemical ingredients that harm and/or kill coral reefs has no utility and financially harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

74.     **Legislative Declared Policy.** Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

75.     **Unfair Conduct.** Defendant's labeling and advertising of the Products, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendant knew or should have known of its unfair conduct. Defendant's misrepresentations constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

76.     **Reasonably Available Alternatives.** There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Reef Safe Representation.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

77.  **Defendant's Wrongful Conduct.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

78.  **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practices of labeling the Products with the Reef Safe Representation.

79.  **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for these Products. Specifically, Plaintiff and the California Subclass paid for Products that contain chemical active ingredients. Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

### B.    "Fraudulent" Prong

80.  **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

81.  **Fraudulent & Material Challenged Representation.** Defendant used the Reef Safe Representation with the intent to sell the Products to consumers, including Plaintiff and the California Subclass. The Challenged Representation is false, and Defendant knew or should have known of its falsity. The Challenged Representation is likely to deceive consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.

82.  **Fraudulent Business Practice.** As alleged herein, the misrepresentations by Defendant constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

83.  **Reasonable and Detrimental Reliance.** Plaintiff and the California Subclass reasonably and detrimentally relied on the material and false Challenged Representation to their detriment in that they purchased the Products.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

84.     **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Reef Safe Representation.

85.     **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

86.     **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling the Products with the Reef Safe Representation.

87.     **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiff paid an unwarranted premium for the Products.  Specifically, Plaintiff and the California Subclass paid for products that they believed contained only ingredients that are safe for coral reefs, when, in fact, the Products contained harmful chemical ingredients that can harm and/or kill coral reefs. Plaintiff and the California Subclass would not have purchased the Products if they had known the truth. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

### C.     "Unlawful" Prong

88.     **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

89.     **Violations of CLRA and FAL.**  Defendant's labeling of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* (the "**CLRA**") and California Business and Professions Code sections 17500, *et seq.* (the "**FAL**") as set forth below in the sections regarding those causes of action.

90.     **Additional Violations.** Defendant's conduct in making the false representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to their

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendant's misrepresentations of material facts, as set forth herein, violate California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

91.    **Unlawful Conduct.** Defendant's packaging, labeling, and advertising of the Products, as alleged herein, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendant knew or should have known of its unlawful conduct.

92.    **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Reef Safe Representation.

93.    **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

94.    **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products.

95.    **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Plaintiff and the California Subclass would not have purchased the Products if they had known that Defendant's purposely deceived consumers into believing that the Products are truly safe for coral reefs. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

/ / /

/ / /

/ / /

/ / /

/ / /

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

## COUNT TWO

## Violation of California False Advertising Law

## (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

## (*On Behalf of the California Subclass*)

96.     **Incorporation by reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

97.     **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

98.     **FAL Standard.**  The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

99.     **False & Material Challenged Representation Disseminated to Public.** Defendant violated section 17500 when it advertised and marketed the Products through the unfair, deceptive, untrue, and misleading Reef Safe Representation disseminated to the public through the Products' labeling, packaging and advertising.  These representations were false because the Products do not conform to them.  The representations were material because they are likely to mislead a reasonable consumer into purchasing the Products.

100.    **Knowledge.** In making and disseminating the representations alleged herein, Defendant knew or should have known that the representations were untrue or misleading, and acted in violation of § 17500.

101.    **Intent to sell.** Defendant's Challenged Representation was specifically designed to induce reasonable consumers, like Plaintiff and the California Subclass, to purchase the Products.

102.    **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the FAL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the

California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

103.   **Punitive Damages.** Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law.  Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving.  Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff.  Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct.  Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights.  Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## COUNT THREE

### Violation of California Consumers Legal Remedies Act

### (Cal. Civ. Code §§ 1750, *et seq.*)

### (*On Behalf of the California Subclass*)

104.   **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

105.   **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

106.   **CLRA Standard.** The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

107. **Goods/Services.** The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

108. **Defendant.** Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

109. **Consumers.** Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d).

110. **Transactions.** The purchase of the Products by Plaintiff and members of the California Subclass are "transactions" as defined by the CLRA under California Civil Code section 1761(e).

111. **Violations of the CLRA.** Defendant violated the following sections of the CLRA by selling the Products to Plaintiff and the California Subclass through the false, misleading, deceptive, and fraudulent Challenged Representation:

a. Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have."

b. Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . [when] they are of another."

c. Section 1770(a)(9) by advertising the Products "with [the] intent not to sell them as advertised."

112. **Knowledge.** Defendant's uniform and material representations and omissions regarding the Products were likely to deceive, and Defendant knew or should have known that its representations and omissions were untrue and misleading.

113. **Malicious.** Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers, including Plaintiff, to increase the sale of the Products.

114. **Plaintiff Could Not Have Avoided Injury.** Plaintiff and members of the California Subclass could not have reasonably avoided such injury.  Plaintiff and members of the California Subclass were unaware of the existence of the facts that Defendant suppressed and failed to disclose, and Plaintiff and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

115.   **Causation/Reliance/Materiality.** Plaintiff and the California Subclass suffered harm as a result of Defendant's violations of the CLRA because they relied on the Challenged Representation in deciding to purchase the Products.   The Challenged Representation was a substantial factor. The Challenged Representation was material because a reasonable consumer would consider it important in deciding whether to purchase the Products.

116.   **Section 1782 – Prelitigation Demand/Notice.** Pursuant to California Civil Code section 1782, more than thirty days prior to the filing of this complaint, on or about November 24, 2020, Plaintiff's counsel, acting on behalf of Plaintiff and members of the Class, deposited a Pre-Lawsuit Demand with the U.S. Postal Service for mailing via certified mail, return receipt requested, addressed to Defendant at its headquarters and principal place of business registered with the California Secretary of State (StriVectin Operating Co., Inc., 601 W. 26th Street #1505, New York, NY 10001), and its registered agent for service of process (CT Corporation System, 818 W. 7th Street Suite 930, Los Angeles, CA 90017). Said Pre-Lawsuit Demand described Defendant's particular violations of the California Consumers Legal Remedies Act, as set forth above, and demanded that Defendant correct and otherwise rectify those violations with respect to Plaintiff and all members of the Class. The form, content, and delivery of the Pre-Lawsuit Demand satisfy subsections (1) and (2) of section 1782(a). The Pre-Lawsuit Demand identified the statutes and/or laws violated, described how they were violated, and explained the nature and extent of remedial action required to rectify those violations. As of the filing of this complaint, said Defendant did not adequately correct, repair, replace, and/or otherwise remediate the violations, including the requested remedial action, consistent with section 1782(c).

117.   **Causation/Damages.**  As a direct and proximate result of Defendant's misconduct in violation of the CLRA, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of this Act in the form of damages, restitution, disgorgement of ill-gotten gains to compensate Plaintiff and the

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

1   California Subclass for said monies.

2         118.   **Injunction.** Given that Defendant's conduct violated California Civil Code section

3   1780, Plaintiff and members of the California Subclass are entitled to seek, and do hereby seek,

4   injunctive relief to put an end to Defendant's violations of the CLRA. Plaintiff has no adequate

5   remedy at law. Without equitable relief, Defendant's unfair and deceptive practices will continue to

6   harm Plaintiff and the California Subclass.

7         119.   **Punitive Damages.** Defendant's unfair, fraudulent, and unlawful conduct described

8   herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive

9   damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the

10   intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving.

11   Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant

12   was, at all times, aware of the probable dangerous consequences of its conduct and deliberately

13   failed to avoid misleading consumers, including Plaintiff.  Defendant's misconduct is oppressive as,

14   at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people

15   would look down upon it and/or otherwise would despise such corporate misconduct.  Said

16   misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of

17   their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally

18   misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers.

19   The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized,

20   adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

21   **COUNT FOUR**

22   **Breach of Warranty**

23   (***On Behalf of the Nationwide Class and California Subclass***)

24       120.   **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all

25   allegations contained in this complaint, as though fully set forth herein.

26       121.   **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and

27   on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products

28   within the applicable statute of limitations.

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

122. **Express Warranty.** By advertising and selling the Products at issue, Defendant made promises and affirmations of fact on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiff and members of the Class and Defendant. Defendant purports, through the Products' labeling and advertising, to create express warranties that the Products, among other things, conform to the Challenged Representation.

123. **Implied Warranty of Merchantability.** By advertising and selling the Products at issue, Defendant, a merchant of goods, made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising, combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiff and members of the Class and Defendant---to wit, that the Products, among other things, conform to the Challenged Representation.

124. **Breach of Warranty.** Contrary to Defendant's warranties, the Products do not conform to the Challenged Representation and, therefore, Defendant breached its warranties about the Products and their qualities.

125. **Causation/Remedies.** As a direct and proximate result of Defendant's breach of warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

126. **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for breach of warranty on behalf of Plaintiff and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving.  Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such misconduct.  Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

### COUNT FIVE

### Unjust Enrichment/Restitution

### (*On Behalf of the Nationwide Class and California Subclass*)

127. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

128. **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

129. **Plaintiff/Class Conferred a Benefit.** By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Products.

130. **Defendant's Knowledge of Conferred Benefit.** Defendant had knowledge of such benefit and Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

131. **Defendant's Unjust Receipt Through Deception.** Defendant's knowing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by

Defendant's fraudulent, misleading, and deceptive representations and omissions.

132. **Causation/Damages.** As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for unjust enrichment in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

133. **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for unjust enrichment on behalf of Plaintiff and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

/ / /

/ / /

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

## PRAYER FOR RELIEF

134. WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

a. **Certification:** For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel;

b. **Declaratory Relief:** For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

c. **Injunction:** For an order requiring Defendant to immediately cease and desist from selling the unlawful Products in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; requiring Defendant to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendant's unlawful conduct; and requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted;

d. **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class, consistent with permissible law and pursuant to only those causes of action so permitted;

e. **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with permissible law and pursuant to only those causes of action so permitted;

f. **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with permissible law and pursuant to only those causes of action so permitted;

g. **Pre/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and

h. **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

Dated: December 6, 2021                    Respectfully submitted,

                                            **CLARKSON LAW FIRM, P.C.**
                                            By:

                                            */s/ Katherine A. Bruce*
                                            RYAN J. CLARKSON
                                            SHIREEN M. CLARKSON
                                            KATHERINE A. BRUCE
                                            KELSEY J. ELLING

FIRST AMENDED CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FARUQI & FARUQI, LLP**
BENJAMIN HEIKALI

*Attorneys for Plaintiff*

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

FIRST AMENDED CLASS ACTION COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues and causes of action so triable.


Dated: December 6, 2021                              Respectfully submitted,

                                                     **CLARKSON LAW FIRM, P.C.**
                                                     By:

                                                     */s/ Katherine A. Bruce*
                                                     RYAN J. CLARKSON
                                                     SHIREEN M. CLARKSON
                                                     KATHERINE A. BRUCE
                                                     KELSEY J. ELLING

                                                     **FARUQI & FARUQI, LLP**
                                                     BENJAMIN HEIKALI

                                                     *Attorneys for Plaintiff*

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265