UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN LOCKLIN,<br><br>        Plaintiff,<br><br>       v.<br><br>STRIVECTIN OPERATING COMPANY, INC., et al.,<br><br>        Defendants. | Case No. 21-cv-07967-VC<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 27 |

      StriVectin makes sunscreen products that it labels "REEF SAFE* SUNSCREEN." The asterisk appears again on the back of the package, followed by fine print stating that the product does not contain two particular ingredients that are widely thought to harm coral reefs. The plaintiff alleges that the company's sunscreen contains four other ingredients that endanger the reefs and that the label is therefore misleading.

      Assuming that the four ingredients do endanger the reefs, the "reef safe" label is misleading—the asterisk and the fine print do not immunize StriVectin against liability. Further, the plaintiff adequately alleges that a product with those ingredients endangers the reefs. The plaintiff has therefore stated a claim for violation of California's consumer protection laws.

I

      The plaintiff, Martin Locklin, bought a 1.5-ounce bottle of StriVectin's "Full Screen Clear Finish" sunscreen for $39.00. He purchased the sunscreen, at least in part, because he thought it posed no threat to coral reefs, based on the label's assertion that the product is "reef safe." Seeking to represent a nationwide class of likeminded consumers, Locklin now brings

several claims against StriVectin, alleging that the label is misleading because the sunscreen contains chemicals harmful to reefs.

The complaint identifies four chemicals present in some StriVectin sunscreens that allegedly threaten reefs and marine life: avobenzone, homosalate, octisalate, and octocrylene. For example, the complaint alleges that octocrylene "has been shown to accumulate in various types of aquatic life" and "adversely impacts coral reefs, even at low concentrations, by accumulating in coral tissue and triggering mitochondrial dysfunction." It alleges that avobenzone reacts to ultraviolet light and can kill the cells in coral reefs, causing a bleaching effect. The complaint cites studies that purportedly support the allegations. And the complaint alleges that the chemicals find their way into the ocean, describing how over ten thousand tons of sunscreen "wash into coral reefs" globally each year. It embeds a graphic from the National Oceanic and Atmospheric Administration that describes how sunscreen washes off human skin and wreaks havoc on marine life, including coral. The graphic lists at least one of the four chemicals—octocrylene—as an ingredient "that can harm marine life."

Some governmental bodies, the complaint points out, have taken action to combat the problem. The U.S. Virgin Islands has banned octocrylene, and the Republic of the Marshall Islands has banned avobenzone. Palau recently enacted a nationwide ban on sunscreens containing any one of numerous ingredients, including octocrylene.

The complaint also references action taken by the Hawaii Legislature. It notes that in 2018 the Legislature enacted a ban on oxybenzone and octinoxate (the two sunscreen ingredients that are absent from the StriVectin products) based on the harm they cause to the reefs and marine life. The complaint then alleges:

> In 2021, state lawmakers amended the bill to also ban the sale of sunscreens that contain avobenzone and octocrylene starting in 2023. Octocrylene was banned because it can disrupt human hormones and has a toxic impact on aquatic ecosystems, including coral reefs. Avobenzone was banned because it is an endocrine disruptor and can reduce coral resilience against the high ocean temperatures that are killing corals worldwide.

2

This description appears intended to suggest that a ban of avobenzone and octocrylene has become law in Hawaii, which is false. Although the Hawaii Senate voted to add these two chemicals to the list, the bill has not actually become law. *See* S.B. 132, 31st Leg., Reg. Sess. (Haw. 2021); *see also* S.B. 2850, 31st Leg., Reg. Sess. (Haw. 2022).[1]

As previously noted, StriVectin labels its bottles "REEF SAFE* SUNSCREEN." The asterisk directs consumers to the back of the bottle, where the packaging explains that the sunscreen contains neither oxybenzone nor octinoxate (the two chemicals, banned in 2018 in Hawaii, that are more commonly understood to harm the reefs). Locklin alleges that the "reef safe" label is false and misleading (and that the asterisk does not make it any less so) because the presence of the additional four chemicals—avobenzone, homosalate, octisalate, and octocrylene—renders the product a threat to the reefs. Locklin asserts violations of California's Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act. *See* Cal. Bus. & Prof. Code §§ 17200 *et seq.*, 17500; Cal. Civ. Code §§ 1750 *et seq.* He also brings common law claims for breach of warranty and unjust enrichment. StriVectin moves to dismiss each claim.

II

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state facts (taken as true) to plausibly state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). For claims sounding in fraud, the complaint must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

1. *California statutory claims*. Locklin brings three claims under California's consumer protection laws. The State's Unfair Competition Law prohibits "unlawful, unfair or fraudulent" business practices. Cal. Bus. & Prof. Code § 17200. Its false advertising law makes it unlawful to make "untrue or misleading" statements. *Id.* § 17500. And the Consumer Legal Remedies Act

---

[1] Counsel for Locklin is warned that any future misrepresentations of this nature will result in sanctions.

prohibits "unfair or deceptive acts or practices." Cal. Civ. Code § 1770. Although the statutes differ slightly, the basic inquiry is the same: Would the defendant's marketing likely mislead a reasonable consumer? *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

The complaint alleges plausible violations of California's false advertising and consumer protection laws. It tells a simple story: StriVectin promises that its sunscreen is "reef safe," when it in fact contains chemicals that actively harm coral reefs and the marine life that rely on them for survival. The complaint cites scientific studies purporting to document the harmful effects of four chemicals present in the sunscreen and actions by governmental bodies to ban them. It alleges a connection between those chemicals and coral reefs: When sunscreen washes off, it flows into the oceans, where its constituent chemical compounds threaten aquatic life. The complaint further explains that some consumers are misled by the "reef safe" label. Thinking that their use of StriVectin's product will not pose a threat to coral reefs, these consumers pay an inflated price for a product that falls short of its promises. Taken together and as true, those allegations suggest that StriVectin's product label misleads reasonable consumers, thereby violating California's consumer protection laws.[2]

Beyond passing Rule 12(b)(6)'s modest threshold, the complaint meets fraud's heightened pleading standard under Rule 9(b). It identifies the label it alleges to be fraudulent, the harmful chemicals that threaten coral reefs, and the specific products that it believes mislead consumers. And Locklin asserts that StriVectin's unlawful practices are ongoing. Those allegations are easily "enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns*, 567 F.3d at 1124 (citations and quotations omitted); *see also Gasser v. Kiss My Face*, 2017 WL 4773426, at *6 (N.D. Cal. Oct. 23, 2017).

---

[2] It bears emphasis that decisions by a few governmental bodies to ban the ingredients would likely not be enough, on their own, to allow a plaintiff to get past the pleading stage. But these actions have some value when combined with the other allegations in the complaint. Even the action by the Hawaii Senate, properly understood, has some minimal value in the grand scheme of the complaint's allegations.

2. *Common law claims*. Locklin also brings claims for breach of warranty and unjust enrichment. Although there exists no standalone claim for "unjust enrichment" in California, courts may "construe the cause of action as a quasi-contract claim seeking restitution." *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal.App.4th 221, 231 (Cal. Ct. App. 2014); *see also Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Beyond restating the same arguments against Locklin's statutory claims, StriVectin does not meaningfully challenge his claims for breach of warranty or unjust enrichment.

III

StriVectin responds that "REEF SAFE* SUNSCREEN" cannot mislead consumers because the asterisk directs them to the back of the package, which explains that the sunscreen contains neither oxybenzone nor octinoxate—the chemicals widely understood to threaten coral reefs. "Thus," StriVectin asserts, "the statement on the label is literally true and there can be no claim for false advertising." In other words, the company contends that even if the four chemicals identified by Locklin do harm the reefs, the lawsuit must be dismissed because the fine print defines "reef safe" narrowly to mean "does not contain two particular chemicals that harm coral reefs."

This argument is absurd. True enough, "information available to a consumer is not limited to the physical label and may involve contextual inferences regarding the product itself and its packaging." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021). And asterisks might cabin sweeping claims or further define ambiguous language. But a company can't say something misleading on the front of a label and escape liability by stating "that's not actually what we mean" in fine print on the back. Imagine a product labeled "VEGAN*" on the front that contained chicken meat. The producer could seek no shelter by explaining on the back that "vegan" in this context means "contains no beef." Or imagine a product labeled "SAFE* FOR HUMAN CONSUMPTION" on the front, with a caveat on the back stating that it "contains no cyanide." If the product contained a lethal dose of ricin, the label would obviously mislead. StriVectin does not have free rein to define "reef safe" to mean anything it wants.

5

Indeed, the complaint in this case alleges a label that is far more misleading than the label in *Williams*, 552 F.3d at 939, where the Ninth Circuit held that the complaint should not have been dismissed. There, the plaintiffs alleged that Gerber's "Fruit Juice Snacks" label was misleading because the product contained no real fruit. *Id.* The district court concluded that no reasonable consumer could be misled and dismissed the case, finding that the ingredient list printed on the box's side dispelled any confusion. *See id.* The Ninth Circuit reversed: "We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Id.* The same goes in a case like this, where a plaintiff plausibly alleges that the words on the front of the package make a promise that is effectively retracted by fine print on the back.

StriVectin next argues that Locklin fails to "show" that the four chemicals are actually dangerous to the reefs, and that the studies cited by the plaintiff do not "establish" what they allege about the chemicals. But at the motion to dismiss stage, complaints need not "show" or "establish" anything. *See Iqbal*, 556 U.S. at 678. Whether the studies cited in the complaint definitively prove Locklin's claims is not a dispute susceptible to resolution on a motion to dismiss. Indeed, the complaint would plausibly allege that the chemicals harm the reefs even if it had cited to no study—because the body of the complaint "detail[s] the specific ingredients" and how they threaten reefs, it does enough at this stage to state a claim. *In re: S.C. Johnson & Son, Inc. Windex Non-Toxic Litigation*, 2021 WL 3191733, at *6 (N.D. Cal. July 28, 2021). By the same token, StriVectin's argument that the complaint fails to state whether the chemicals are present at high enough concentrations to actually cause harm is misplaced. In any event, even if the chemicals pose only a serious—but ultimately uncertain—threat to coral reefs, that may well be enough to prove that the company's "reef safe" claim is false or misleading to a reasonable consumer who cares about avoiding using products that endanger the reefs.

True, if the studies directly contradicted Locklin's allegations about the threats posed by the chemicals, that could provide a basis to dismiss the complaint. *See Alamilla v. Hain Celestial*

*Group, Inc.*, 30 F.Supp.3d 943, 944 (N.D. Cal. 2014) (dismissing a complaint where "[t]he articles the plaintiff cite . . . contradict the allegation upon which their entire complaint hinges"). After all, a plaintiff can "plead himself out of a claim by including unnecessary details contrary to his claims." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). But that has not happened here. The cited studies reference at least some of the chemicals identified in the complaint and purport to document their potentially harmful effects on coral reefs. Discovery may expose that those studies contain vital flaws, but it is enough for now that the studies do not plainly refute the allegations in the complaint.[3]

StriVectin also seeks dismissal by characterizing the plaintiff's claims as "lack of substantiation" claims. There exists no "private cause of action to enforce the substantiation provisions of California's unfair competition or consumer protection laws." *Kwan v. SanMedica International*, 854 F.3d 1088, 1096 (9th Cir. 2017); *see also National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.*, 107 Cal.App.4th 1336, 1344 (Cal. Ct. App. 2003). Courts must therefore parse complaints brought by private litigants to ensure that they allege actual falsity. *See, e.g.*, *In re Clorox Consumer Litigation*, 894 F.Supp.2d 1224, 1232 (N.D. Cal. 2012) ("Courts have been careful to distinguish between allegations that a defendant's advertising [statements] are actually false and allegations that such [statements] lack substantiation."). Locklin does not allege that StriVectin's "reef safe" assertion lacks substantiation—that, say, no scientific evidence exists to bolster the company's advertising. He instead asserts that StriVectin's "reef safe" label is outright false. By alleging that the sunscreen contains chemicals that directly threaten coral reefs, the complaint identifies "specific facts pointing to actual falsehood." *Kwan*, 854 F.3d at 1097; *see also id.* at 1095 n.2 (collecting cases distinguishing lack of substantiation and actual falsity).

StriVectin's argument that Locklin lacks standing to pursue injunctive relief is also

---

[3] *Aloudi v. Intramedic Research Group* does not say otherwise. 729 F.App'x 514 (9th Cir. 2017). The Ninth Circuit found the complaint inadequate in that unpublished case because the plaintiff cited plainly irrelevant studies and attempted to "rely on anecdotal evidence" to bolster his allegations. *Id.* at 516–17. The complaint here is far more developed and coherent.

flawed, at least in light of Ninth Circuit law. The Circuit has held that consumers may have Article III standing to pursue injunctions in cases like this one. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018). "In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Id.* at 969–70. Locklin alleges just that. He says that he would purchase StriVectin's sunscreen again were the "reef safe" claim true. That is enough at this stage to meet Article III's bar.

\* \* \*

The motion to dismiss is denied. StriVectin must file an answer within 21 days of this order.

**IT IS SO ORDERED.**

Dated: March 23, 2022

VINCE CHHABRIA
United States District Judge